[McCain et al. v. The State.]

## McCain *et al. v.* The State.

*Indictment for failing to keep Street in Repair.*

1. *Highways in municipal corporations; jurisdiction over.*—When a rural district is made the site of an incorporated town, exclusive jurisdiction and authority over the public roads and highways, theretofore existing within the corporate limits, pass to the corporate authorities.

2. *Same.*—It rests within the governmental discretion, confided to the corporate authorities, whether they will use or adopt such highways as streets; they may do so, or may alter or even abolish them as streets, as the wants of the community may require; and not having adopted such highway as a street, or having abolished it as such, they are not indictable for failing or refusing to keep it in repair.

APPEAL from Calhoun Circuit Court.

Tried before Hon. WILLIAM L. WHITLOCK.

The appellants were tried and convicted for failing to keep in repair a certain road or street in the town of Anniston, they being the corporate authorities of said town. The facts as to the situation and condition of the road which was suffered to remain out of repair, are fully stated in the opinion. The court, *ex mero motu,* charged the jury, " that if they believed from the evidence that the road described in the indictment is in the corporate limits of the town of Anniston, and was a public road when the town was created, then the corporate authorities of Anniston did not have any authority to abolish or discontinue this road; and although the jury may believe, from the evidence, that the corporate authorities of Anniston did pass an ordinance abolishing or discontinuing said road, the ordinance is not any defense to this indictment." To this charge the defendants excepted. Defendants requested the court in writing to charge the jury : " If the jury believe, from the evidence, that twelve months before the finding of the indictment the road described in the indictment had ceased to be necessary as a public highway, then the jury should find the defendants not guilty." This charge the court refused to give, and the defendants excepted. The charge given and the refusal to charge as requested, are now assigned as error.

JOHN T. HEFLIN, for appellants.

HENRY C. TOMPKINS, Attorney-General, *contra.*

STONE, J.—The corporate limits of the town of Anniston

extend two miles in every direction from a named point. This gives an area of four miles across. The inhabitants are shown to be about five hundred persons. Anniston is then a small village, necessarily leaving much of its territorial area unoccupied. It was founded and incorporated only a few years ago. Before that time, this large territorial area must have been a rural settlement or district; and the proof shows that what the prosecution claims has become a street of the village, was, at the time of settlement and incorporation, a public highway or country road crossing within the chartered limits of the village, nearly or quite two miles from the business centre. Its bearing is not towards Anniston, and persons going to, or returning from the village, would not travel this road. It appears to have been a connecting line with another highway, leading from Oxford to Alexandria, rendered convenient and necessary at the time, by the fact that it was an outlet from Blue Mountain on the Selma, Rome and Dalton railroad, at which there was, at one time, a depot and steam saw mill. These have long been discontinued, and with them, it would seem, the main use of this highway. The inquiry arises, when a rural district is made the site of an incorporated town, what is the effect upon the public roads theretofore existing within the chartered limits? Are they thereby converted into streets, and if so, with whom rests the jurisdiction and authority to continue, change or abolish them; with the corporate authorities, or with the Court of County Commissioners? Manifestly, what we know as a public road or highway has very little resemblance to a street in a village, town or city. And roads across such rural territory, having no business centre, would be ill-adapted to the wants of a village afterwards established there, itself a business centre. To hold such public roads, thus brought within the boundaries of an incorporated town, to be still under the jurisdiction of the Court of County Commissioners, would be very unnatural, and might lead to conflicts of authority, which should always be avoided. For the Court of County Commissioners to exercise jurisdiction over such highways as a road, and the corporate authorities to exercise jurisdiction over them as a street, would be impossible. They cannot be both a public road of the county, as that phrase is understood, and a street of an incorporated village at one and the same time. One character must yield to the other.

The defendants were indicted for failing and refusing, as officers and supervisors of the public streets of Anniston, an incorporated town, to repair a named street, and for suffering it to remain out of repair for more than ten days at

one time. If this road or street was not within the governmental control and jurisdiction of the said corporate authorities, then they could not be indicted for permitting it to remain out of repair. When the town was incorporated, and its territorial boundaries established, we think it necessarily followed that the jurisdiction and authority over the highways within those boundaries were transferred to the corporate authorities. Having authority and jurisdiction over the streets of the village, it was clearly within their power to open, alter or even to abolish streets that had ceased to be useful, as, in their judgment, the wants of the village and the public convenience might demand; subject always to the right of eminent domain inherent in the legislative authority of the State. Of course they would be liable to amotion, and possibly to penalties, for a corrupt, causeless, or wanton exercise of this power. The governmental discretion, however, must rest somewhere, and the law confides this, and all other police powers of municipal corporations, to the corporate authorities as the governing body.

We take a further step. A town, created and incorporated as this was, out of rural territory, having, perchance, its public roads adapted to its wants and convenience as a rural community, cannot be bound by any principle of law to adopt and keep up, as a public street, every public road or highway that may have been in use before the change. Nor could a property holder, by dedicating a portion of his soil to the public as a street, compel the corporate authorities, against their consent, to adopt it and keep it up as a street, when the convenience of the public, or the growth and expansion of the town, did not call for such new street.—Dillon on Mun. Corp. §§ 460 *et seq.* 516; Code of 1876, § 1782, Subd. 6; *State v. Mayor, &c.* 5 Port. 279. We think the corporate authorities were authorized to abolish the street, or, to refuse to recognize it as a public street, for not repairing which the appellants were indicted. The charge of the Circuit Court is not reconcilable with these views.

Reversed and remanded—the defendants to remain in custody until discharged by due course of law.