# Board of Revenue of Jefferson Co. *v.* State *ex rel.* City of Birmingham.

## *Mandamus.*

(Decided July 6, 1910. Rehearing denied Jan. 12, 1911.
54 South. 757.)

1. *Words and Phrases; Streets; Roads; Highways.*—The terms "streets," "roads" and "highways," and related descriptive words have been treated by many courts as synonymous in interpreting a statute.

2. *Constitutional Law; Construction; Validity.*—All doubts are resolved in favor of the validity of a statute.

3. *Same; Construction as a Whole.*—A constitutional provision should be construed in the light of the entire instrument.

4. *Same; Presumptions.*—The framers of the Constitution are presumed to have known of the pre-existing decision of the Supreme Court affecting a particular subject or matter.

5. *Same; Legislative Declaration; Effect.*—The legislature cannot alter, contract or expand constitutional provisions.

6. *Highways; Nature; Taxes.*—A tax for a macadam road is a general tax subject to apportionment between the municipality and the county as provided by Acts 1909, p. 303, and not a special tax within section 215, Constitution 1901.

7. *Same; Statutes; Repeal.*—Acts 1909, p. 303, was not repealed by the act readopting the code of 1907, as to a tax previously levied.

(McClellan, J., dissents.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Mandamus by the State of Alabama on the relation of the City of Birmingham against the Board of Revenue of Jefferson county. From an order granting the writ the Board of Revenue appeals. Affirmed.

The petition alleges that the City of Birmingham is a municipal corporation under and by virtue of the laws of the state of Alabama regularly organized during the month of August, 1907, under the Municipal Code Act enacted during that year. The respondents are the Board of Revenue of Jefferson county regularly elected and of legal age and requirement. 2. That the city of Birmingham, situated in Jefferson county, Alabama, and that the Board of Revenue of said county did on June 24, 1909, levy a special road tax and a special bridge tax upon all property and values assessed in the city of Birmingham for that year. (Then follows the order of the court.) 3. That on the 15th day of February, 1910, the city of Birmingham did regularly make claim upon the Board of Revenue of Jefferson county, to pay over as provided by law to the city of Birmingham one-half of the money collected on such special road and bridge taxes on property located in the city of Birmingham, said money to be used by the city of Birmingham exclusively for maintaining streets and bridges in the corporate limits of said city. Such claim was

properly verified, etc., and upon the 17th day of February, 1910, said Board of Revenue disallowed said claim as to all the money claimed to be due the city of Birmingham for its pro rata share of the special road and bridge tax, and refused to pay same. 4. It sets out the reorganization of Birmingham under the Greater Birmingham bill. 5. Avers the amount alleged to be due said city of Birmingham from said tax. 6. Sets forth section 1335, Code 1907, and alleges that the city of Birmingham informed the respondent that said section was the law under which said claim was sought. 7. Sets forth an act of the legislature of August 26, 1909, and alleges that under it, it claimed the pro rata share of the special road tax. This section also sets forth the act of the legislature adopting the Code. 8. Sets up that the amount claimed by the city of Birmingham from the Board of Revenue of Jefferson County has been levied and collected by the Board for a special road and bridge tax, that such money is in the hand of the treasurer of Jefferson county, and subject to warrant, for the purposes herein sought. Then follows the prayer that they be required to draw their warrant, etc. The demurrers set up the fact that the levy was made prior to the adoption of the act under which relator claims. Because section 1335 of the Code upon which petitioner relies imparts no validity to the demand of petitioner. Because said section became a law after the act adopting the Code was enacted, and therefore did not become a part of the Code as adopted. Because the Act of August 26, 1909, was violative of section 45 of the Constitution, and is also violative of section 215 of the Constitution, and the laws under which relief is sought are violative of section 216 of the Constitution. Petition shows on its face that the Board of Revenue of Jefferson county never levied a bridge tax, but levied a tax

[Board of Revenue of Jefferson Co., v. State ex rel. City of Birmingham.]

of one mill on the dollar for bridge and public buildings, and never levied any bridge tax at all. Because a payment of said portion of said road tax to the city of Birmingham cannot be made without violating section 94 of the Constitution and because petition shows on its face that the purpose for which said warrant is demanded is not a county purpose. There was an order below ascertaining that the treasurer of Jefferson county had on hand the sum of $51,135.40, assessed and collected for macadam roads under the custody and control of the respondents, and subject to their warrant, and that a half of it, to-wit, half of the amount collected from property within the city of Birmingham, belonged to the city of Birmingham, and that the Board of Revenue draw its warrant on the county treasurer in favor of the city of Birmingham for the sum of $22,-160.00.

"EXHIBIT A"

Ordered by the Board of Revenue of Jefferson county, Alabama, that there be levied upon all property and value assessed in the county for revenue to the state for the current tax years 2½ mills on the one dollar for the general fund for the current year, one (1) mill on the one dollar for macadam roads, one (1) mill on the one dollar for bridges and public buildings, one (1) mill on the one dollar for public schools of the county, one (1) mill on the one dollar for school tax voted June 20th, 1904, ¼ mill on the one dollar for the interest on sanitary sewer bonds and for keeping in repair and maintaining the sanitary system of Jefferson county, and for the protection of water supplies of Jefferson county, Alabama.

It is further ordered by the Board that on all license levied and collected by the state under the authority of law that there be and hereby is levied for the use of

Jefferson county fifty (50) per centum of the amount for the use of the state for the year 1909.

JOHN H. MILLER, and W. K. TERRY, for appellant. Section 120, of the Municipal Code Act, was held unconstitutional in the case of *State ex rel. City of Birmingham v. Miller*, 48 South. 496. Appellee bases its right to recover on section 1335, Code 1907, and the act readopting the Code, Acts 1909, p. 303. It is clear that the only authority that the Board of Revenue had for levying the tax on June 24, 1909, was for public roads outside the city, and the legislature could not by an act passed two months after such levy, divert a portion of said fund from the public roads to the streets and avenues of said city.—Sec. 215, Const. 1901; *Nashville v. Towns*, 5 Snead 186; *Forsythe County v. Forsythe Commissioners*, 37 S. E. 261; *Attorney General v. Bay County*, 34 Mch. 46; *Woolsey's case*, 95 N. Y. 139. It is further insisted on the above authority that the levy is a special levy, and not a part of the general road tax.

R. H. THACH, for appellee. The matters raised and referred to in this case were ably discussed in the case of *Duval County v. Jacksonville*, 29 L. R. A. 421. See also in this same connection, *State v. Street*, 117 Ala. 209; *Board of Commissioners v. Lucas*, 93 U. S. 115; *State ex rel. v. St. L. Co.*, 34 Mo. 570; *People v. Power*, 25 Ill. 172; *Sangamon v. Springfield*, 63 Ill. 71; *County of Richmond v .Lawrence*, 12 Ill. 1; 2 Kent. 306; 1 Abbott Mun. Corp. p. 131, 133 2 Id. 120; Elliott on Roads and Streets, sec. 83; 7 A. & E. Enc. of Law, 966.

McCLELLAN, J.—The following act, omitting its caption, was approved August 26, 1909 (Acts Sp. Sess. 1909, pp. 303, 304) :

"Section 1. That the maintenance of streets of municipalities in the state of Alabama is hereby, for the purpose of this act, declared to be a county matter.

"Sec. 2. That courts of county commissioners and boards of revenue, where there is levied a road tax, general or special, or where by the tax levy a portion of the tax is levied for or devoted to the purpose of constructing, repairing or maintaining roads or highways of any description, in the county, shall pay over each year to each municipality therein one-half of the money collected on such road tax on the property located in such municipality.

"Sec. 3. That such sums when paid over to the municipalities shall be used exclusively for maintaining the streets in the corporate limits of such municipality, provided that if the tax is levied for any particular class of roads or highways, such sums shall be used on the streets of the municipality for roads of a similar character to such roads or highways.

"Sec. 4. That all laws or parts of laws in conflict with this act, general or special, be and the same are hereby repealed."

Section 215 of the Constitution of 1901 reads:

"No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one-half of one per centum; Provided, that to pay debts existing on the sixth day of December, eighteen hundred and seventy-five, an additional rate of one-fourth of one per centum may be levied and collected which shall be appropriated exclusively to the payment of such debts and the interest thereon: Provided further, that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of

the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges or roads, any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected."

In the recent pronouncement made in *Adams v. Southern Railway Company,* 167 Ala. 383, 52 South. 439, and in the previous ruling made in *Southern Railway Company v. Cherokee County,* 144 Ala. 579, 42 South. 66, this court took account of section 215, and in construction of the section established these (as presently important) propositions: That the power to levy and collect the special tax for public roads, bridges, etc., can only be exercised by a *county,* and not by a fraction thereof, and the tax must, in certain consequence, be imposed and exacted within the rule of uniformity pertaining to taxation; that the object of the special tax is to satisfy *county* debt or liability contemplated or then incurred in providing the roads, bridges, etc., defined in the section; and that the application of the funds raised by the special tax must be to the special purposes contemplated in the creation of the power, conferred by *exception* from a major inhibition against the power to tax beyond the stipulated limit.

One of the purposes for which the special, *exceptional,* tax provided for in the section is allowed is for the erection of necessary public roads. It is apparent, from the terms of the quoted act, that the intent thereof was to bring, by legislative declaration, *streets* in municipalities within the constitutional term *"roads,"* and, in consequence, permit the application, in this instance, of a

fraction of the garnered special tax for constructing,
etc., *roads* to municipal *streets*. It cannot be gainsaid
that, if the Constitution itself does not intend the em-
bracing of *streets* in the employed term *"roads,"* a term
used in definition of an exception, a proviso, to a major
limitation (see *Adams v. Southern Railway Co.*), the
act must be condemned. That many courts have, upon
occasion, treated the terms *"streets," "roads," "high-
ways,"* and related descriptive words, as synonymous,
and so in the interpretation of statutes, if not organic
laws, may be readily seen by reference to 7 Words and
Phrases, pages 6250-6254, 6684, et seq. But, if it be so
conceded, such adjudications cannot avail to influence
or control the conclusion in this instance, in light of the
section in hand and in the view that has long prevailed
in this state as respects the creation, maintenance, and
repair of the public necessities commonly called *"roads"*
and *"streets,"* to be read from decision, statute, and
Constitution.

Section 215, after fixing the general limitation upon
the power of counties to tax, excepted, within a stipu-
lated limitation, from the control of the general limita-
tion the power to tax for certain defined purposes. Con-
sistent with the governmental authority to which the
major limitation of taxing power was applied, the ex-
ceptions were addressed to the *counties* as governmen-
tal units. It nowhere affirmatively appears from the
section that municipalities, in any feature of their or-
ganism or authority, were in mind when its major lim-
itation was fixed and qualified by the exceptions min-
utely defined. Indeed, from the patent fact that in the
next succeeding section (216) the taxing power of mu-
nicipalities is amply dealt with, it cannot be a matter of
doubt that in writing and adopting section 215 the
makers of the organic law attended *only* to the *county*

10—172.

as a source of the sovereign power of taxation. From
the general scheme of county and municipal subordi-
nate government familiar to all, it appears with cer-
tainty that it was never contemplated that the munici-
pality should derive the source of governmental life,
viz., funds drawn from taxation, from the exercise of
county authority or county taxing power. Each char-
acter of government was intended to be, and it is, armed
with its own separate taxing power for its own separate
sustenance; and while the county can tax the property
of the citizen within the municipality within the county,
the exercise of that power is none the less a county act,
neither infractive of the municipal right nor expansive
of the county power. A vital feature of this twin sys-
tem of minor government is, of course, the taxing
power; and the present organic law treats each sepa-
rately, and sets down in independent sections the re-
spective limitations on the taxing power of each class
of subordinate governments. So, to conclude on this
idea, if there be in the whole range of municipal and
county authority and law points whereat these, in a
sense, twin governments become blended in authority
and purpose, the taxing power (and necessarily the ben-
efit thereof must coincide with and conform to that
power and its exercise) is not one of the means inviting
that result. It hence necessarily follows that the exer-
cise of each authority of its taxing power must redound
to its benefit, to its warrantable purpose, alone.

In view of the separate and separable status of the
two minor governments, counties and municipalities,
that at least in organism and source of separate suste-
nance of each provided by the taxing power, it is inev-
itable that, in order to sustain the application of the
funds gathered by special county tax to the improve-
ment or construction of a municipality's *streets,* a clear

manifestation of constitutional intent to that end must
appear. While great deference is always here paid leg-
islative expression as spoken by its enactments, yet the
question in hand cannot be resolved without a negative
response to the inquiry: Is the Constitution violated
by the course commanded by the act quoted before? All
doubts must be resolved in favor of validity; but the
doubts so to be resolved must, of course, find inspiration
in the organic law as applied to the enactment, and the
enactment, however emphatic its declaration, cannot
alone cast the conclusion.

Coming to the concrete question presented, Does the
term *"roads,"* as employed in section 215, include
*streets* in municipalities? No better means to the correct
ascertainment of the constitutional intent in the prem-
ises appears than that afforded, as we view it, by the or-
ganic law itself. No interpretation of Constitution or
statute can be well or safely approved that does not take
into account the whole Constitution or the whole enact-
ment. Terms employed in Constitution or statute may,
and often do, have diverse meanings, and comprehend
when used in one connection what is not intended they
should include when used in another connection. For
instance, shooting along or across a *street* was, in *Gaston
v. State,* 117 Ala. 162, 23 South. 682, held to be a viola-
tion of the penal statute (Code 1896, § 5354) forbid-
ding shooting across or along a *"public road,"* upon the
evident idea that the gist of the offense defined was the
use of firearms in *public places;* whereas, where the of-
fense charged was the failure to keep a *public road* in
repair, it was ruled in effect, in *McCain v. State,* 62 Ala.
138, that the omission charged could not be sustained
where the neglected part of the roadway had become a
part of municipal territory. We doubt not other penal
statutes tending to the preservation of *public roads*

would be held inapplicable to *streets* in municipalities.

That the Constitution makers did not intend the inclusion of *streets* in the term *"roads,"* as used in section 215, will appear from reference to sections 220, 223, 225, 227, and 228. In each of these sections the term *"street"* is employed as aptly descriptive of a thoroughfare in municipalities. Along with its use in that connection the terms *"avenues," "alleys," "sidewalks," "street paving,"* and *"street improvements,"* all having reference to urban ways alone, appear. None of these terms even suggest any relation to the rural highway, which, to us, is familiarly known, in statute and decision, as a *"public road."* So that we feel impelled to affirm that the makers of the Constitution recognized and wrote to the generally well-understood distinction, in reference, between *roads* and *streets*—a distinction thus aptly noted by Stone, J., in *McCain v. State*: "Mani-festly, what we know as a public road or highway has very little resemblance to a street in a village, town, or city. ⁂ * * They cannot be both a public road of the county, as that phrase is understood, and a street of an incorporated village at one and the same time. One character must yield to the other."

It must be presumed, in the absence of countervailing expression, that the makers of our organic law were cognizant of the status of decision fixed by *McCain's Case, supra,* in respect of the distinction indicated. Being so, it necessarily results, especially in view of the *county* purpose, as distinguished from other purposes of governmental entertainment, with which the exception in hand deals, that in the use of the term *"roads"* municipal *streets* were not included. If *public roads* only, as distinguished from *streets*, were in contemplation of the makers of the Constitution, it is obvious that the Legislature, by mere declaration that a *street* was a

*public road* for the purposes of maintenance, could not bring the way, still a *street,* within the benefit of the power intended by section 215 to be given *county* authorities.   Constitutional mandates and restrictions cannot be altered, contracted, or expanded, by that means.

Looking to the broader view, there is another consideration that leads to the constitutional invalidity of the quoted act.   In this state internal county government has long been committed to bodies called *"commissioners' courts"* and *"boards of revenue."* These institutions exercise the fiscal, as well as many other, powers of *county* authority.   To these institutions reference must necessarily be had, when restrictions on the exercise of the internal *county* authority are met with in the Constitution.   The governmental attributes or powers of such institutions, in respect of internal government and affairs of the county, were said, in *Jeffersonian Publishing Co. v. Hilliard,* 105 Ala. 576, 578, 17 South. 112, to be in part legislative, in part judicial, and in part executive or administrative.   Taking account of the discretion necessarily implied in the effective exercise by these institutions of at least some of the powers referred to in *Jeffersonian Publishing Co. v. Hilliard, supra,* this court, in *Hays v. Ahlrichs,* 115 Ala. 239, 248, 22 South. 465, concluded against the equity of a bill to enjoin the building of a vault for the county of Cullman, on a contract therefor by the county body, on the ground that authorized "discretionary powers" were involved, and no mala fides was shown.   The satisfactory note at page 93 of 2 American State Reports was referred to in the opinion as collating the authorities.

Section 215, in the proviso under consideration, expressly confines the application of the fund raised by the special tax to the purpose for which it is levied and col-

lected. Unquestionably no right rests with the Legislature to impair, much less defeat, the exercise of the power which the Constitution contemplates. Indeed, to go further, the Legislature cannot fix such conditions to the exercise of the power and the ultimate application of the fruits of its exercise as to qualify the power and to restrict the legitimate benefit thereof to its objective. If the Legislature may direct, as in the act in hand, that a percentage of the fund raised by the special tax paid on property within a municipality shall be paid over to the municipal authorities, it would, of course, be permissible to direct that *all* of the special tax paid on property within municipalities shall be paid to those authorities, to be applied to the improvement of thoroughfares within them only. The immediate result of such legislative direction is to divest the governing bodies of counties of any discretion in respect to the application of a part thereof (that paid on property in municipalities) to designated highways in municipalities. In other words, that process of legislative control (if sustained) would toll the sum available to the application of the county governing bodies to the purpose contemplated in the Constitution (section 215) to the extent that property in municipalities contributed to the special fund. The Constitution's warrant, under the pertinent proviso, is to the *county*, and the Legislature cannot qualify or impair it. To illustrate with Jefferson county: If the county authorities should validly levy and collect the special tax to construct a road, as in their discretion may be done, from the confines of corporate Bessemer to the confines of corporate Birmingham, the sum available therefor would not be the amount of the special tax drawn generally and uniformly from the entire county of Jefferson, but would be, if the quoted act were valid, the whole special fund

so collected, *less* 50 per cent. of the amount received
from the special tax on property within Bessemer and
Birmingham, together with that proportion of the tax
paid by property in such other municipalities in the
county as came under the act in question; and the
subtrahend would give the whole amount subject to the
control of the county governing body for application
beyond the confines of municipalities in the county. So
that, if the county of Jefferson should incur a debt or
liability in the construction of a roadway between the
points before indicated, the entire proceeds of the spe-
cial road tax could not, if this act be valid, be applied to
the discharge of that debt or liability, but only such
part of it as passed through the sieve of the act in hand
could be so applied; and, if the sum of the collected spe-
cial tax, *less* the deductions the act requires, was insuf-
ficient to pay the debt or liability so warrantably in-
curred, the plain result would be that the *county* might
levy and collect the special tax in order to discharge the
*county* liability, as the Constitution clearly intends, and
yet a part of the gross special tax sum would, by legis-
lative action, be forbidden application to that constitu-
tionally commanded purpose.

Broadly considered, the sum of the whole matter is
that the Constitution (by proviso) permits the invest-
ment of the counties with the special power to tax for
the special purpose of constructing and maintaining
public roads, and commands the application of this tax
fund to that purpose alone while the Legislature has
undertaken by this act to direct the application of the
fund, pro tanto, to municipal streets, thereby necessar-
ily denying to rural sections of the counties the benefit
of that percentage of the fund contributed by property
owners in municipalities. This would divert, pro tanto,
the special fund, specially raised, from the purpose the

Constitution clearly intends, in this instance, to alone and without qualification subserve. The authorities cited in brief for appellee have been carefully considered. In none of them were the courts delivering the opinions dealing with constitutional terms and purposes similar even, to those with which this appeal is affected.

In this instance, mandamus is sought, not only to compel the delivery, by the commissioners' court to the municipality of Birmingham, of one-half of the sum contributed by property in the municipality to the special road tax fund, but also that proportion of the special bridge tax fund contributed by property in the municipality. The substance, in general purpose, of the act quoted before, was first section 120 of the Municipal Code, approved August 18, 1907. It appears as Code 1907, § 1335, though adopted subsequent to the Code of that year. Affirming the ruling of the learned court below, this section (120) was declared invalid in *State ex rel. v. Miller,* 158 Ala. 59, 48 South. 496. The mandamus was awarded below on this petition, but only as to the relief sought in respect of the special road tax. Consistent with the conclusions reached here, the judgment of the circuit court, awarding the writ, must be reversed, and a judgment will be here rendered denying the writ of mandamus prayed.

The opinion entertained renders unnecessary the consideration of the other questions raised and argued.

Reversed and rendered.

ANDERSON, MAYFIELD, and EVANS, JJ., concur. DOWDELL, C. J., and SAYRE, J., dissent.

[Board of Revenue of Jefferson Co., v. State ex rel. City of Birmingham.]

## On Rehearing.

PER CURIAM.—The court is of the opinion that the fund in question was levied under the general power of taxation, and was not the tax authorized under subdivision "a" of section 215 of the Constitution of 1901. We are also of the opinion that Acts 1909, page 304, required the court of county commissioners to pay over to the municipality one-half of all taxes on property, within said municipality, as was levied and collected for maintaining roads and highways. Nor do we think that this act was, as to this particular fund, repealed by the act of the same date (Acts Sp. Sess. 1909, p. 174), readopting the Code of 1907. Whether or not so much of the act, or so much of section 1335, as requires the payment to the municipality of one-half of the tax levied for a specific purpose, under subdivision "a" of section 215 of the Constitution, is valid, we need not decide, as that question is not involved.

The rehearing is granted, the reversal is set aside, and the judgment of the circuit court is affirmed.

Affirmed.

DOWDELL, C. J., SIMPSON, MAYFIELD, SAYRE, and EVANS, JJ., concur.

McCLELLAN, J.—(dissenting).—The opinion delivered on the original consideration of this appeal was adopted as authority for the conclusion in *State ex rel. City of Tuscaloosa v. Court of County Commissioners of Tuscaloosa County*, 54 South. 763 (affirmed on authority of this case). There was no application for rehearing of that appeal. On the rehearing of this appeal, the majority rule that the tax of one mill for "McAdam roads" was not a *special tax* within the *second* proviso of section 215 of the

Constitution, and, the sum gathered under that levy being the product of a levy for *general purposes,* the act of August 26, 1909 (Acts Sp. Sess. 1909, pp. 303, 304) or Code, § 1335 (see readopting, of Code, act of August 26, 1909 [Acts Sp. Sess. 1909, p. 174]), or both, was or were the valid exercise of the legislative power to direct the payment over to municipalities of *general* funds, not derived from *special* taxation under the second proviso of section 215 of the Constitution, in the proportion and as contemplated in the act or Code section, or both, before cited. The opinion on original consideration of this appeal was not withdrawn or modified, by the granting of the rehearing of this appeal, as the expression of the view of the court on the unclouded question presented and decided in the *Tuscaloosa Appeal, supra.*

The writer adheres to the original construction of the order of the board of revenue of Jefferson county, viz., that the levy thereby "for McAdam roads" was the levy of a *special tax* for *"roads,"* and hence the product of the levy was and is subject to the restriction, in application, written in the *second* proviso of section 215 of the Constitution. That such levy accurately answers to the accepted description of a *special tax,* as expressed in *State v. Street,* 117 Ala. 203, 210, 23 South. 807, and also in 2 Desty on Tax. p. 1186, cannot, as the writer views it, be a matter of doubt. Besides, the intent of the levying body to so characterize the levy "for McAdam roads" is made entirely clear when reference is had to the just preceding levy, in the order, of "2½ mills on the one dollar for the general fund." Other undoubtedly *special taxes* are levied in the order. There is no merit, in my opinion, in the suggestion that there can be no special tax, under the latter proviso of section 215, until the general limitation therein pro-

vided is reached by a county. The word *"additional,"* in the first proviso of section 215, does not occur in the second proviso. The right to levy the *special taxes* enumerated in the second proviso is not restricted by the word *"additional,"* or any equivalent term. Its inclusion of that word in the first, and its omission from the latter, proviso, emphasizes the correctness of the view just stated.

The word *"road,"* as employed in the Constitution, does not include *streets.—McCain v. State,* 62 Ala. 138; *Wiggins v. Skeggs,* 171 Ala. 492, 54 South. 756. See, also, subdivision 26 of section 104; sections 220, 222, 223, 225, 227, and 228.