# Town of Eutaw *v.* Coleman.

*Bill to Enjoin Payment for Stret Improvement.*

(Decided July 25, 1914.   Rehearing denied November 7, 1914.
66 South. 646.)

*Counties; Funds; Improving Street.*—County funds not otherwise appropriated or set apart by law may be appropriated by the court of county commissioners towards a partial payment for the improvements by a town of the streets and sidewalks around the block occupied by the buildings belonging to the county.

(Gardner, J., dissents.)

APPEAL from Greene Chancery Court.
Heard before Hon. THOMAS H. SMITH.

[Town of Eutaw v. Coleman.]

Bill by Thomas W. Coleman as citizen and taxpayer, to enjoin the town of Eutaw from collecting certain warrants issued by the county in payment of street improvement around the buildings belonging to the county. Reversed and rendered..

McKINLEY, McQUEEN & SNOW, and A. G. and E. D. SMITH, for appellant.

R. B. EVINS, and THOMAS W. COLEMAN, for appellee.

SAYRE, J.—The authorities of the town of Eutaw, the seat of county government in the county of Greene, having in contemplation the improvement of certain streets and sidewalks of the town, but unwilling or unable to pave the sidewalks on the four sides of the square upon which are located the courthouse and other county buildings, or to improve so much of the circumjacent streets as lay between said sidewalks and the median line of said streets, communicated these facts to the court of county commissioners, with a view to having that authority assume for the county the expense of that part of the work which the town was unwilling or unable to undertake. It was thereupon "estimated and found by the court (of county commissioners) that the work to be done on the sidewalks and streets for the improvement of county property aforesaid is reasonably the sum of $4,116.12," and the town of Eutaw was authorized and empowered to include and let to contract the construction and laying of a cement sidewalk, 10 feet in width, on all four sides of the courthouse square, and to build and construct a roadbed along such parts of said streets of material and according to plans and specifications adopted by

the municipal authorities for the improvement of the streets and sidewalks of the town, and the sum of $3,000 was appropriated for said improvements, payable to the town in ten annual installments to bear interest from the completion of the work, and the judge of probate was authorized, on the completion of the work, to draw warrants upon the country treasury in favor of the town for said sums. It appeared that in 1838, when the county site was moved from Erie to Eutaw, the county had received a conveyance in fee of 20 acres of land; that this tract had been laid out into streets and squares, one square being set apart for the courthouse and other county buildings; and that thus was laid the foundation of the town of Eutaw. Probably, in making the arrangement for the county's contribution to the improvements described above, both municipal and county authorities proceeded upon the theory that the county's ownership of the fee in the sidewalks and streets, to the improvement of which the county proposed to contribute, constituted sufficient, or even necessary, reason and justification in law for that contribution. Appellee filed his bill as a taxpayer of Greene county to enjoin the payment of these warrants, and upon bill, answer, and evidence taken, the chancellor decreed relief according to the prayer of the bill.

We do not feel any great degree of confidence in the theory upon which the municipal and county authorities appear to have acted in contracting for this appropriation of county funds, for the reason that there had been a dedication of the said square upon which the improvement was to be made to the use of the public as a highway, whether as county road or town street, irrevocable save with the consent and approval of the state, acting through its agencies con-

[Town of Eutaw v. Coleman.]

stituted in that behalf, and the county authorities proposed to contribute to its improvement as a highway only, and not for any other purpose, so that the question at issue depends, as we conceive, not upon the ultimate ownership of the fee in the soil, but upon the present location of the state's delegated power to promote the public easement by improving the way in the precise manner that has been adopted, a power combining elements legislative, judicial, and executive, and resting upon the principle that the unqualified proprietary right in all the highways of the state, as long as they are highways, is in the state, and which the state exercises or delegates to subordinate local agencies according to its sovereign notion of expediency and public convenience. But the occasional ground upon which the county commissioners may have thought it necessary, or prudent at least, to find warrant for their proceeding is of no consequence as affecting the essential equity of the bill in this case, if sufficient sanction for what they have done and propose to do can be found in the law and the facts as they are, without regard to the quantity or quality of the county's interest in the soil, and they have sought to do it by the use of proper and lawful means. In the event of a concurrence of power and proper means employed, the fact that the governmental agencies concerned have sought other and unnecessary justification for their course is quite immaterial.

Our opinion is that, in the circumstances shown, the court of county commisioners had power and authority to appropriate county funds, not otherwise set apart by law, to the improvement of the streets of Eutaw. We are not dealing with any question of the advisability of what the commissioners have done. There is no charge of fraud, corruption, or unfair dealing, and,

in the absence of some such charge, this court is committed to the doctrine that in no case involving the exercise of discretionary power by the court of county commisioners will their action be controlled by any judicial tribunal.—*Matkin v. Marengo County*, 137 Ala. 155, 34 South. 171. The question then is merely one of power in the court of county commissioners.

Municipal corporations, with the express consent and approval of the state, commonly exercise powers not strictly governmental. Municipalities and counties alike are organized under law to aid the state in the administration of the strict powers of government, of which provision for highways is one of exceeding great importance. Over the highways of the state, and over the local governmental agencies through which the state exercises its powers in respect to them, subject only to limitations imposed by the letter or plain implication of the Constitution, the authority of the Legislature is ample and unrestrained.—*State ex rel. City of Mobile v. Board of Revenue of Mobile County*, 180 Ala. 489, 61 South. 368.

The courts of county commissioners of the several counties of the state have at all times been invested with a general superintendence of the public roads in their respective counties, and, to the end that travel over the same may be as safe and convenient as practicable, they are given legislative, judicial, and executive powers.—Code, § 5765. Since the adoption of the present Code and now "courts of county commissioners or courts of like jurisdiction are courts or boards of unlimited jurisdiction and powers as to the construction, maintenance, and improvement of the public roads, bridges, and ferries, except as their jurisdiction or powers may be limited by the state and federal Constitutions, or by the general and local stat-

utes of the state. To such courts or boards the pow-
ers of the state pertaining to the construction, main-
tenance, and improvement of the public roads, bridges,
and ferries are delegated when not otherwise provided
by law."—Section 5767, Code.

It may be said that the powers here conferred on
commissioners' courts must be interpreted as limited,
so far as concerns public roads, to public county roads,
as contradistinguished from town or city streets. The
word "roads"was so limited in the construction of sec-
tion 215 of the Constitution of 1901, authorizing the
levy and collection of special taxes for the erection,
construction, or maintenance of necessary public build-
ings, bridges, or roads.—*Commissioners' Court of Pike
Co. v. Troy,* 173 Ala. 442, 56 South. 131, 274, Ann.
Cas. 1914A, 771; *Board of Revenue Jefferson Co. v. Bir-
mingham,* 172 Ala. 138, 54 South. 757. We consider
the precise question involved in those cases to have
passed without the field of debate. But here the entire
power of the state in the matter of public roads, except
as limited by statute, is conferred upon courts of coun-
ty commissioners, and now every intendment must be
indulged in favor of their acts. If, then, the public
streets of cities and towns may, in any possible cir-
cumstances, be considered as public roads within any
just and possible meaning of the statutes quoted above,
then courts of county commisisoners may in those cir-
cumstances and to the extent of that limited sense ex-
ercise the powers of the state in reference to them,
provided only that in so doing they run counter to no
express provision or necessary implication of statute
or Constitution. Reference being had to the public
uses and purposes to be subserved, rather than to any
mere adjectives by which avenues of public communi-
cation and travel may be designated, we think there is

a sense and there are circumstances in which a highway through an incorporated municipality falls within the power of commissioners' courts over the public roads of the county.

County territory by no means loses its identity as such by reason of its simple inclusion within the limits of an incorporated city or town, nor do the people of a county lose their legal or practical interest in the maintenance of the highways within the incorporated area. Their right of way cannot be denied, abridged, or aliened by the town.—*Bell v. Foutch,* 21 Iowa, 131. In the case at hand the people of Greene county, whether they live within or without the town of Eutaw, have every beneficial interest in the proper maintenance of the streets of Eutaw they would have if the town had never been incorporated. They have, indeed, a peculiar interest in the streets in question, for the reason that these streets constitute the approach from every quarter to the seat of government, and the administration of that government at its appointed place requires that they be kept in a passable condition. And if the county may, of its resources, contribuate to the keeping of these streets in a passable condition, it may help to keep them decently and conveniently free of mud in wet weather and of dust in dry seasons; and if such improvement contributes to the sanitation, comfort, and convenience of the courthouse, and the preservation of the public records there kept, as the bill in this case avers, that is but another reason why it should be made, and why some authority to make it should be sought in the interpretation of the law. Here there is imperium in emperio, and the inquiry as to what exclusive jurisdiction resides in the included government depends as much upon the matter of substance as upon territorial lines. Urban jurisdiction must be

exercised upon· urban subject-matter.· So with· the county. But what is urban subject-matter and what county subject-matter is a question of something more than mere form.

In Iowa a statute· (Code, § 422, subd. 18) conferred upon county supervisors. the express power "to· provide for the erection of all. bridges which may be necessary, and which the public convenience may require, within their respective counties, and to keep the same. in repair." The towns and cities act (Code, § 757) provided that the city council shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares, and commons within this city. The question was whether the county of Polk, acting in concert with the city of ·Des Moines, might appropriate county funds to· the building of a bridge within the city. Judge Dillon thought, though he did not rule the point, that perhaps the language of these statutes might be held to· mean that, though the county should build the bridge, the city authorities should have supervision and control over it. But he found· a more satisfactory reason for approving the contribution of the county funds to the building· of a city bridge on the consideration that, since the bridge was a part of a highway which accommodated all the citizens of the county and the traveling public at large, and since the fund out ·of·which it was proposed to· contribute was raised by taxation upon all property, city and county alike, a construction of the statutes would be, unwarrantable, the language not imperatively requiring it, ·which would deny equality of benefit ·where ,there must ·be equality of burden. Of· the rule which. would exclude--this inequality ·of tax burden from consideration .as a most important factor in the; interpretation of. such ·statutes, the Supreme. Court

of Florida, speaking through Maxwell, J., said in *Skinner v. Henderson,* 26 Fla. 121, 7 South. 464, 8 L. R. A. 55: "This involves relieving the county from the burden when a county purpose is to be subserved in a municipality, but holding the municipality liable for both county and municipal burden, whether in or out of the corporate limits. The palpable injustice of this is most striking. It is nothing more or less than imposing a double burden upon municipal citizens, one of which is a burden for a county purpose within the municipality, and exempting other citizens of the county from any burden for such purpose, although interested in common in the object to be attained."

Further, Judge Dillon, having in mind, of course, that the bridge in question in the case before him was within the limits of the municipality, said: "If we should be mistaken in the view above taken as to the power and right of the county to erect public bridges on public highways inside of the city, still we cannot be mistaken in saying that it is a matter of county duty to see that bridges across the water courses of the county are provided for."

And in *Commissioners of Duval County v. Jacksonville,* 36 Fla. 196, 18 South. 339, 29 L. R. A. 416, the Supreme Court of Florida, again following the lead of Judge Dillon, said of county money: "So long as the money is devoted to such streets, even though expended under the agency of the municipal corporation, it would not be a diversion of it under such statutes from strictly county purposes."

So here, we think there ought to be no doubt about the duty and right of the county, except as imperatively denied or limited by the municipal code law or the local municipal charter, to provide for access to the courthouse and other county buildings, or to pro-

vide for the decent, comfortable, convenient, and sanitary keeping of those buildings and their contents of archives and records, even though to do so may require them to extend their operations into the public streets of the surrounding city or town. These principles have been recognized, and to some extent made obligatory upon county authorities, in the act approved August 26, 1909, (Acts Sp. Sess. p. 303), which declares that the maintenance of streets in municipalities is, for the purposes of the act, a county matter, and requires courts of county commissioners, where any portion of the county levy is devoted to the construction, repair, or maintenance of roads or highways of any description in the county, to pay over to each municipality therein one-half of the money collected for roads out of the property located in such municipality.

They have also been recognized and applied in at least one case by this court. For the reason that county commissioners, in respect of the ways of communication and travel which the people of a county have and must have, exercise a discretion for the public convenience with which the courts will not interfere, unless they transgress the limits of positive law or are guilty of fraud or corruption, it was held in *Barks v. Jefferson County,* 119 Ala. 600, 24 South. 505, that the county was liable for personal injuries caused by a defective bridge erected under contract with the court of county commissioners, where no guaranty bond was taken as provided by section 2512 of the Code of 1896 (section 3038 of the present Code), although the bridge when erected, was not a part of any pubic highway. "There can be no doubt, upon a just construction of the municipal code law (chapter 32 of the Code of 1907), that the exclusive power and authority to con-

[Town of Eutaw v. Coleman.]

trol streets, including sidewalks, and keep them in re-
pair, has been conferred upon the municipal corpora-
tions of this state. From this power and authority a
corresponding and coextensive duty must be inferred,
and as well civil liability for the consequences of de-
fault therein."—*Bessemer v. Whaley,* 187 Ala. 525, 65
South. 542.

The same conclusion must follow upon a reading of
the special charter of the town of Eutaw. Acts 1868,
p. 506; Acts 1880-81, p. 493; Acts 1896-97, p. 337. But
neither this conclusion, nor any consideration of the
purposes for which municipal and county governments
are organized, nor any general or local statute law of
which we are informed, would deny the power of courts
of county commissioners, acting of their own free will
and accord and upon their own honest judgment of
the public convenience to be served, and in concert
with municipal authorities, to contribute out of the
general funds of the county to the improvement and
maintenance of the public highways of a municipality
within the bounds of the county. So doing they de-
vote the funds of the county to one of the necessary
and leading purposes for which county government is
formed without in the least interfering with munici-
pal control of the streets, or with the paramount rights
of the municipality to direct the manner and extent
of their maintenance and improvement, or with munic-
ipal responsibility in the premises. If this be not so,
then where is the statute against the letter or spirit
of which they have offended.

When the facts averred in *Wiggins v. Skeggs,* 171
Ala. 492, 54 South. 756, are considered, there will be
no difficulty in distinguishing this case from that. The
bill in that case showed that the county commission-
ers, without, so far as appeared, consulting the munic-

[Town of Eutaw v. Coleman.]

ipal authorities, had let a contract for, and were proceeding to make, changes in a street in the city of New Decatur and town of Fairview according to their own judgment of what should be done. It also averred facts going to show that no county purpose was being served by much of the work by averring that the construction of that part of the road there in question, or a large part of the same, within said municipalities, would not be of any material benefit or convenience to the people of the county going to the courthouse in Decatur, because to travel it would take them far out of a more direct and shorter route, and that "said road, if constructed, would be used principally as a street or public thoroughfare by those residing within said municipalities." In *Benton v. Girard,* 168 Ala. 175, 52 South. 842, it seems to have been assumed, without any occasion for decision on that point, that a county may not construct sidewalks along its public roads, and hence that case is cited here for the purpose apparently of suggesting that the inclusion of the sidewalks around the courthouse square within the purpose and object of the appropriation put the entire proceeding without the pale of law; but the statement there made in reference to sidewalks along county or country roads was, we take it, a mere inadvertence, for if there ever was any reason for such a statement, there is none now that the powers of the state pertaining to the construction, maintenance, and improvement of the public roads, bridges, and ferries, unless otherwise provided by law, are delegated in broadest terms to the courts of county commissioners or boards of like jurisdiction.

In *McCain v. State,* 62 Ala. 138, the corporate authorities of the then recently organized town of Anniston were indicted for failing to keep in repair a cer-

tain road or street within the incorporated area. Prior to the incorporation of the town the subject of the alleged offense had been a public highway or country road. The trial court had instructed the jury that, although they might believe from the evidence that the corporate authorities of the town had passed an ordinance abolishing or discontinuing said road, the ordinance was not any defense to the indictment. Ruling that this charge was error, Judge Stone, arguendo said: "To hold such public roads, thus brought within the boundries of an incorporated town, to be still under the jurisdiction of the court of county commissioners, would be very unnatural, and might lead to conflicts of authority, which should always be avoided. For the court of county commissioners to exercise jurisdiction over such highways as a road, and the corporate authorities to exercise jurisdiction over them as a street, would be impossible. They cannot be both a public road of the county, as that phrase is understood, and a street of an incorporated village at one and the same time. One character must yield to the other."

This was true for the purposes of that case, and may be true for many other purposes where a conflict may arise. In case of conflicting jurisdictions, no doubt, that of the county must yield to that of the municipality. But neither the exigency of that case nor anything in the essential nature of the subject-matter of discussion required that a chasm should be dug between two authorities, exercising themselves in the same area and for many purposes in common, unabridgeable by concert of action to a common end clearly within the purpose for which each was created, and we do not believe that eminent judge intended his language to be so construed. Here each authority con-

cerned is fulfilling its own mission, though they meet upon common ground; there is no conflict, nor can any be imagined to grow out of what they, each with most careful regard to the limitations of its own powers, have agreed to do; and we can see no sufficient reason why the court should interpose its veto.

Appellee did not in his bill make it a ground of complaint against the warrants he sought to enjoin that the claims thereby evidenced had not been itemized, verified, and audited as required by sections 146 and 147 of the Code. The bill did not, therefore, apprise defendants that proof of compliance with these sections of the Code would be required, and appellee can take nothing by reason of a failure in that respect, if failure there was. But, without regard to this lack of proper predicate for appellee's contention on this point, it is to be noted that this court has heretofore appeared to be of opinion that these provisions of the Code were intended for the benefit of the county, and might be waived by the court of county commissioners.—*Crenshaw County v. Fleming,* 109 Ala. 554, 19 South. 906. But, further, the court did audit the claim shown by the warrants in question when it considered and determined what the county would contribute to the purchase of certain work to be done according to certain plans and specifications. Thereafter it only remained for the court to see that the work was done according to the contract.—*Talley v. Commissioners' Court of Jackson,* 175 Ala. 644, 39 South. 167.

Commissioners' courts are not without authority to issue interest-bearing warrants to cover ordinary debts. —*Alabama City, G. & A. Ry. Co. v. Gadsden,* 185 Ala. 263, 64 South. 91. A warrant is not a bond.—*Savage v. Matthews,* 98 Ala. 535, 13 South. 328. In *Talley v. Commissioners' Court of Jackson, supra,* the court

said: "It was decided in the case of *Matkin et al. v. Marengo County et al.,* 137 Ala. 155 [34 South. 171], that the issuance by the authority of the commissioners' court of interest-bearing warrants on the county treasurer payable at a stated time in the future—ten years in that case—for the amount of a debt contracted for the building of a courthouse was not the issuance of bonds by the county within the competency of the court of county commissioners. We adhere to and reaffirm that ruling."

We see no substantial difference betwen those cases and the case at bar. There is no statute that makes any difference. *Vincent v. Gilmer,* 51 Ala. 387, upon which appellee relies, did not deny the power of a county to contract for the payment of interest on its warrants; it ruled only the ordinary warrants drawn upon the county treasury did not bear interest. It being the law that ordinarily county warrants are payable when the county is in funds and in the order of their presentation and registration "the creditor, receiving the amount specified in the warrant, receives all to which he is entitled. He contracted with the county, not for the payment of a sum certain, when his claim is audited and allowed, but for the payment of the amount allowed him, in the order of payment prescribed by the law."—*Vincent v. Gilmer, supra.*

Nothing of this militates at all against the power of the county to contract for the deferment, with interest, of an obligation assumed.

We have considered all necessary questions. Our conclusion is that the decree below should be reversed, and a decree here rendered dismissing the bill.

Much of the matter in the transcript has been needlessly brought in by appellant. Appellee will pay the

[Town of Eutaw v. Coleman.]

costs incurred in the court below and the remainder of the costs of the appeal.

Reversed and rendered.

MAYFIELD, J., concurs in the opinion. ANDERSON, C. J., and SOMERVILLE, J., concur in the conclusion. GARDNER, J., dissents. MCCLELLAN and DE GRAFFEN-RIED, JJ., not sitting.

GARDNER, J.— (Dissenting.)—While the holding of the majority determines the result in the case, yet it does not settle any question of law, as the majority do not concur in the opinion of Justice SAYRE, but only in the conclusion. This is to be regretted in view of the importance of the question involved. I am unable to agree with the majority, and therefore respectfully dissent.

As I view it, if the commissioners' court of Greene county may lawfully appropriate the funds of the county in part payment for paving the streets surrounding the square of the town of Eutaw, then it must logically follow that they could with equal consistency appropriate the funds of the county for the *whole* payment thereof.

I am wholly unable to find any authority, either express or implied, for the commissioners' court of Greene county to appropriate the funds of the county in the payment in whole or in part of the pavement of the streets of the town of Eutaw. I forego the writing of my views at length, but cite, as somewhat bearing on the question, the following cases: *City of Hunts-ville v. Madison County,* 166 Ala. 389, 52 South. 326, 139 Am. St. Rep. 45; *Benton v. City of Girard,* 168 Ala. 175, 52 South. 842; *McCain v. State,* 62 Ala. 138; *Wiggins v. Skeggs,* 171 Ala. 492, 54 South. 756; *Board*

of *Revenue of Jefferson County v. Birmingham*, 172 Ala. 138, 54 South. 757, in connection with *State ex rel. City of Tuscaloosa v. Tuscaloosa County*, 173 Ala. 724, 54 South. 763; *Com'rs' Court, Pike Co., v. City of Troy*, 173 Ala. 442, 56 South. 131, 274, Ann. Cas. 1914A, 771.

I am of the opinion that the decree of the chancellor is correct, and should be affirmed.

ANDERSON, C. J.—While I concur in the conclusion reached in this case, I do not indorse all that is said in the opinion of SAYRE, J., and do not wish to be understood as holding that the county commissioners have independent jurisdiction or authority over the streets of Eutaw. I base my conclusion solely upon the theory that the pavement in question was a betterment or improvement of the county property, being upon the border thereof and tending to beautify same, make it perhaps more accessible, as well as comfortable, to the occupants of the courthouse by preventing to some extent mud in winter and dust in summer. The fact that a municipal street was thereby improved was but an incident to the improvement of the courthouse square and its borders or immediate surroundings, so far as the county was concerned, and while the county had no right to control the municipal street, yet, if the town was willing for it to enter upon the street or co-operate with it, the county had the authority to do so if it was for the purpose of improving or benefitting the county property, although by doing so it might or did improve the municipal highway. Suppose the property surrounding the courthouse was not a street, but belonged to an individual, in whole or in part, and was in such a condition as to mar the beauty of the courthouse and grounds, or interfere with the approach thereto, or cause it to be flooded during a wet season, could not the county remedy the defects,

[Profile Cotton Mills v. Calhoun Water Company.]

with the consent of the owner, although by doing so the said adjoining property would be benefitted? I think so. Could it be questioned that the county could not drain or sewer its lot even if the pipes or curbing were placed on the lands of another, in whole or in part and with the consent of the owner, even though it also benefitted the property upon which said improvements encroached? I think not. Could not the county inclose and improve the borders of its property by a wall or fence and place the same over its line, in whole or in part, with the consent of the attingent owner, although it also benefitted the property upon which the improvements encroached? I think so. It may be that paving the streets in question was primarily the improvement of the municipal highway, so far as the town is concerned, but, as to the county, it was but an improvement of its property, and the fact that it also operated to improve the streets was a mere incident to the betterment of its property. If the county could make such improvements alone, there is no sound reason why it could not co-operate with the adjoining owner in doing something mutually beneficial.