[Board of Revenue of Covington County v. Merrill.]

# Board of Revenue of Covington County *v.* Merrill.

## *Certiorari of Contempt Proceedings.*

(Decided April 23, 1915.  Rehearing denied June 3, 1915.
69 South. 971.)

1. *Counties; Governing Board; Powers; Discretion.*—The powers conferred on boards of revenue by section 130, et seq., and sections 3306, 3313 and 3321, Code 1907, and in Covington county, by Local Acts 1911, p. 331, includes authority and discretion in the management, control, maintenance and construction of county public buildings and improvement, and in the absence of fraud, corruption or unfair dealing, the exercise of this discretionary power cannot be controlled by the court.

2. *Certiorari; Action of County Board; Review.*—Where the board of revenue of the county, or its commissioners, have no power to make the order complained of, the party complaining has an adequate remedy by common law certiorari, but the chancery court is without jurisdiction.

3. *Counties; Acts of County Officers; Remedy of Tax Payers.*—Except in cases of fraud, a complaining tax payer must first go before the board of revenue, or the commissioner's court, and make the proper motion to have the void proceedings set aside, and failing therein, may then apply to the courts for a common law writ of certiorari to review such order.

4. *Same; Powers.*—A county board of revenue or commission, proceeding to construct a new court house, has discretionary power to advertise for bids, employ an architect, and determine the time, manner and how the contract is to be let.

5. *Injunction; Temporary; Amendment to Bill.*—Where a bill has been filed for an injunction, and a motion to dissolve the same is pending before answer, an amendment to the bill allowed by the register, without notice to respondent, the amendment merely extending the injunction to third persons made respondents by the amendment, does not have the effect to dissolve the temporary injunction as against the original respondent.

6. *Counties; County Board; Meetings; Statutes.*—Under the statute prescribing the regular meetings of revenue boards or county commissioners, and authorizing special session, such boards must meet in regular sessions on the days specified, but may continue the sessions from day to day, and a special session is not the prolongation of a regular session, and may be called when a proper adjournment has not been taken in regular session to a subsequent day; hence, where the minutes of the board show that it was in session on the designated day of one of the designated months, and in session on the next or succeeding days thereafter, a continuance of the regular

session will be presumed, and an adjournment to a subsequent day, within the term may be taken, and any act at an adjourned term is as valid as if done on the day of the regular term.

7. *Same; Official Act; Validity.*—Where the minutes of the board of revenue showed a regular meeting of the board on November 9, at which plans for the construction of a courthouse were accepted, an architect elected, and a contract for the work approved, with authority to the chairman to execute the contract, and to pay a specific sum for the purchase of land for a site; and at an adjourned term bids were received, and the board adjourned to a subsequent term or day, and subsequent bids were received, and the contract was awarded December 24, and duly signed, but the minutes failed to show whether the board was constantly in session from day to day to December 24, or whether the meeting on December 24 was an adjourned meeting, the action of the board was within their discretion, and could not be interfered with by an appeal to equity, there being no fraud, corruption or unfair dealing.

8. *Same; Interest Bearing Warrants.*—Board of revenues or courts of county commissioners may issue interest-bearing warrants to cover obligations of the county for the erection of a courthouse, and the purchase of the necessary land for a site therefor.

9. *Same; Change of Site.*—The provisions of section 41, Constitution 1901, do not forbid the erection of a new courthouse on a different lot in the same town or county seat; the terms courthouse site, and county site, merely designating the seat of government of the county. Where a city or town is selected as a county site or county seat, the boundary thereof, as then existing becomes the boundary of the county seat, and where a town was not incorporated at the time of its selection as the county seat, and the building of the courthouse, the boundaries of such municipality as subsequently laid out, become the county seat, and the board of revenue or court of commissioners, may designate any lot therein as a new courthouse site.

10. *Same; Courthouse Contracts; Validity.*—The fact that an architect selected by the board of a county to assist in the construction of a courthouse could increase the profits of the contractor by collusion with him, did not invalidate the contract for the courthouse, or for the employment of the architect in the absence of any fraud, corruption or collusion between the achitect and the members of the board, or between the architect and the contractor.

11. *Same; Bill to Restrain Bids; Parties.*—In a bill by a taxpayer to restrain the board of revenue of a county from accepting any bids for the erection of a new courthouse, or from making any contract for the erection thereof, the person or persons from whom a new site had been purchased for the courthouse, were not necessary parties.

12. *Contempt; Review; Certiorari.*—On certiorari the Supreme Court can review the action of the chancellor on motion for contempt for the violation of an injunction.

13. *Injunction; Violation; Contempt.*—Sections 3057 and 4630, Code 1907, only give the right of punishment when one is in contempt of a court having jurisdiction, and one may disregard an injunction,

[Board of Revenue of Covington County v. Merrill.]

not within the jurisdiction of the court to issue, without being guilty of contempt.

14. *Same.*—An injunction issued on a bill showing that the court is without jurisdiction of the subject-matter, is void and need not be obeyed.

15. *Constitutional Law; Due Process; Jurisdiction.*—Due process of law requires that the court which assumes to determine the rights of parties, shall have jurisdiction to hear and determine on the merits, and a denial to defendant, charged with violating an injunction not within the jurisdiction of the court to enter, of the right to file any motion, answer or pleading in the cause in which the injunction was issued, until purged of an adjudged contempt therein, is a denial of due process of law guaranteed by the 14th amendment to the Federal Constitution.

16. *Counties; Actions of Board; Review; Injunction.*—To state a cause of action within the jurisdiction of a court of equity, a bill by a taxpayer of a county to restrain the county governing body from accepting any bids for the erection of a courthouse, and from making any contract for its construction, must allege facts showing fraud, corruption or unfair dealing, and collusion on the part of the board, or members thereof, with the contractors or other persons, to divert public funds for their own benefit, or for the benefit of third persons for and with whom they seek to contract.

17. *Equity; Pleading; Averment.*—In equity pleading it is not sufficient merely to aver evidence from which a required fact may be inferred, although, if uncontradicted, such evidence may be sufficient to induce a chancellor or a jury to so find the fact.

18. *Fraud; Pleading; Intent.*—In equity pleading a fraudulent intent essential to constitute a cause of action must be averred and not left to inference.

CERTIORARI to Covington Chancery Court.

E. R. Merrill filed a bill against the Board of Revenue of Covington County and others to enjoin the erection of a courthouse, and for other relief. From certain orders and decrees holding respondents in contempt for violating the injunction, respondents bring certiorari. Writ granted and orders and decree quashed.

G. W. L. SMITH, STEINER, CRUM & WEIL, PARKS & PRESTWOOD, and BALL & SAMFORD, for appellant.

POWELL & ALBRITTON, and C. E. HAMILTON, for appellee.

THOMAS, J.—The original bill was filed in the chancery court by E. R. Merrill, as a resident citizen and taxpayer of Covington county, Ala., and sought an injunction against the board of revenue of that county and W. F. Simmons, J. A. Prestwood, John J. Deens, W. D. Powell, and W. N. Cook, the members thereof, to restrain them from accepting any bids on December 5, 1914, or at any time thereafter, after service of the writs upon them, for the erection of a new courthouse in the city of Andalusia, Ala., and to restrain them and each of them from making or entering into any contract for the erection and construction of a new courthouse in the city of Andalusia, on the said 5th day of December, 1914, or at any time after the service of said writs of injunction upon them, until the further order of the court, and prayed that, on final hearing of the said cause, said injunction be made perpetual, and that the contract between the board of revenue and one W. L. Stephens, architect, be declared null and void, and be canceled.

The fiat for the injunction was made, the prescribed bond given, and approved by the register, and the writ of injunction issued, on December, 4, 1914; and service of the injunction was had on W. F. Simmons, as president of the board of revenue and also as one of the board, and on J. J. Deens, W. D. Powell, W. N. Cook, and J. A. Prestwood, as members of the board of revenue.

On December 5, 1914, J. A. Prestwood, John J. Deens, W. D. Powell, and W. N. Cook, as members of said board of revenue, moved to dissolve the injunction, "for want of equity in the bill and on the sworn denials contained in the answer of the defendants in the cause."

The complainant, on December 11, 1914, amended

the original bill by making parties defendant W. L. Stephens, Mrs. Anna W. Riley, and Dr. L. E. Broughton, and by adding, after the third paragraph of the bill, the following: "Orator further alleges and charges that at the session of said board of revenue held on October 19, 1914, as herein above alleged, one of the lots ordered to be purchased for the location of the new courthouse was to be purchased from Mrs. Anna W. Riley, and the other lot, upon which the courthouse was to be located, was to be purchased from Dr. L. E. Broughton; the order of the board, as shown by the minutes, with reference to said purchase, being as follows: 'On motion, duly made, seconded, and carried, it is hereby ordered and decreed that those two lots on the north side of Court Square, in Andalusia, Ala., known, named, and called as the Mrs. Anna W. Riley property and Dr. L. E. Broughton property, be bought for the location of a new courthouse for Covington sounty, and that Mrs. Anna W. Riley be paid the sum of $11,000 for said lot, with buildings thereon, and $11,000 to be paid in two equal annual installments of $5,500 each; and that Dr. L. E. Broughton be paid the sum of $6,500 for said lot, said $6,500 to be paid in two equal annual installments of $3,250 each. The first payment of the two equal annual installments to be due and payable on the purchase of both of said lots on April 1, 1915; said purchase to be subject to said Anna W. Riley and L. E. Broughton furnishing Covington county with good and satisfactory titles to said lots.' "

The amendment was duly verified and "allowed and filed December 11, 1914," according to the indorsement by "A Whaley, Register." There was no leave of the court first had and obtained, nor order thereon that the bill be amended without prejudice to the injunction.

The question presented by the bill is that of the jurisdiction of the chancery court to restrain the board of revenue from entering into the contracts for the building of a new courthouse for Covington county, specifically referred to in the bill. The petitioners for certiorari, board of revenue of Covington county, and J. A. Prestwood, W. D. Powell, and W. N. Cook, individaully and as members of said board of revenue, and Falls City Construction Company, a corporation under the laws of Kentucky, on whose prayer was awarded the writ bringing this cause before this court for review, contend that the bill shows the want of jurisdiction of the subject-matter, and no right to grant the injunction.

(1) The board of revenue of Covington county, Ala., was created by the Act of April 7, 1911 (Local Acts 1911, p. 231). By section 3 the board was given the authority to direct and control the property of said county "as it may deem expedient according to law." Section 4 confers "all the jurisdiction and all the powers which are now or may hereafter be by law vested in the courts of county commissioners of this state, and the several members of the said board of revenue of Covington county shall respectively perform all the duties and services and exercise all the powers which are or may be required by law of the several members of the courts of county commissioners." Section 8 provides that the board of revenue "shall hold four sessions annually, viz., on the second Monday in February, April, August, and November, respectively, of each year," and may hold a special session at any time, upon the call of the president or of any three members of the board, by giving notice by advertisement, for 15 days before such time, in a newspaper published in Covington county.

Boards of revenue and courts of county commissioners are courts of record of limited jurisdiction.—Code

1907, §§ 3306, 3321. Such boards and courts have the same powers.—Code, § 3321, Loc. Acts 1911, p. 231. They are by the statute clothed with full power to erect and maintain public buildings for the use of the county, and to levy taxes for the payment of their contracts in that behalf. By the Code of 1907 (section 130) the court of county commissioners has control of all property belonging to the county, and may by proper order direct the disposition of any real property which can be disposed of. Section 131 provides that the county buildings are to be erected and kept in order and repair, at the expense of the county, under the direction of the courts of county commissioners, which court is authorized to make necessary contracts for that purpose. Section 133 provides that the courts of county commissioners shall erect courthouses, jails, hospitals, and other necessary county buildings, and that they shall have authority to levy special taxes for such purposes. Section 134 and 138 authorize such court to levy and collect such special taxes as it may deem necessary, not to exceed one-fourth of 1 per cent. per annum, for the construction of public buildings, bridges, and roads. Section 139 provides that this levy of special taxes for county purposes "shall be made by the court itself," and that the court "has authority to direct and control the property of the county as it may deem expedient according to law."—Code 1907, § 3313. The terms of the sessions of the boards of revenue are fixed by the act of 1911 and by sections 2146, 3310, 3311 of the Code of 1907.

The powers conferred by the statute on commissioners' courts and boards of revenue are full and explicit, committing to them authority and discretion in the management, control, maintenance, and construction of the

public buildings of the county, and of its improvements, and in the general conduct of its business.

In *Commissioners' Court v. Moore*, 53 Ala. 25, 27, Chief Justice Brickell declared that the court of county commissioners is the repository of "the authority and jurisdiction, whether legislative, judicial, or executive, committed to the county," and that "this body is entitled a court of record."—*Jeffersonian Pub. Co. v. Hilliard*, 105 Ala. 576, 578, 17 South. 112; *State ex rel., v. Rogers et al.*, 107 Ala. 444, 456, 19 South. 909, 32 L. R. A. 520; *Banks v. Jefferson County*, 119 Ala. 600, 24 South. 505.

The duty to erect and maintain public buildings for the county is mandatory on courts of county commissioners and boards of revenue; and, in the discharge of such duty, this court or board has the full right and power, not only to build county courthouses or to make contracts therefor, but to pass and allow the valid claims of architects, contractors, and others, accruing under contracts on such account made with the court or board. When it has discharged this duty by making contracts for public buildings or other improvements, such as the court may think necessary· or sufficient, though the building or improvement may not be of the kind or character desired by the citizens, the county has spoken; and it is no ground for interference, by injunction, with any such contract honestly made and within the powers of the court, as defined by the statute, that the citizens of the county or a majority of them can be shown to disapprove the contract.—*Long et al. v. Shepherd et al.*, 159 Ala. 595, 598, 48 South. 675; *Matkin v. Marengo Co.*, 137 Ala. 155, 34 South. 171; *Hays v. Ahlrichs*, 115 Ala. 239, 22 South. 456:

*Tally v. Com'rs, Jackson Co.,* 175 Ala. 644, 39 South 167.

The power to maintain implies the power to build, according to the judgment of the board, to meet the necessities of the case.—*Allen v. Intendent & Councilmen of La Fayette,* 89 Ala. 641, 8 South. 30, 9 L. R. A. 497. Incidental to the power to build roads, bridges, jails, hospitals, and courthouses is the implied power in the board or court to properly inform themselves and to protect the county by the employment of engineers and architects accustomed to such construction, that the needed facility may be the better constructed and adapted and the general public thus the better served.—*Smith v. McCutchen, Judge,* 146 Ala. 455, 41 South. 619.

In *Banks v. Jefferson County,* 119 Ala. 600, 24 South. 505, Mr. Justice Coleman declared: "There is no statute limiting the discretion of the commissioners' court in the establishment of bridges in the county, to public highways, nor does any statute prescribe the manner or proceeding by which the court acquires jurisdiction of the subject-matter of erecting bridges. This court is invested with peculiar powers, both legislative and judicial, and exercises a wide discretion for the public convenience."

In the location, erection, repair, removal or the furnishing of the county's public buildings, the commissioners' court or board exercise a discretion that cannot be exercised for them. In the performance of such duties, they exercise a function that is quisi legislative; and their acts in this behalf, when free from fraud, corruption, or unfair dealing, cannot be controlled or reviewed by any other court.—*Matkin v. Marengo County, supra; Hays v. Ahlrichs, supra; Commissioners' Court v.*

*Hearne,* 59 Ala. Am. Rep. 730; *Parnell v. Commissioners' Court,* 34 Ala. 278; *Commissioners' Court v. Bowie,* 34 Ala. 461; *Moore v. Hancock,* 11 Ala. 245.

It is profitable to note that Mr. Justice Goldthwaite, in. *Hill v. Bridges,* 6 Port. 197, announced this power of courts of commissioners; and he there had to say, on this subject: "The discretion reposed in that court is of so peculiar a nature, in relation to their jurisdiction over roads, and many other matters that it is difficult to perceive for what reason it could be supposed that this or any other court is invested with power to revise its judgments. * * * The Legislature, in commiting this species of local legislation to a tribunal, emanating immediately from the people of the county, cannot be supposed to have intended their discretion to be subject to revision. Cases may arise in which an improper action by the court of commissioners might be controlled by a court of chancery," etc.

In all of the decisions of this court, on the point, since the above announcement, nothing more has been attempted than to specifically define the instances in which "an improper action by the court of commissioners might be controlled by a court of chancery"; and such instances are limited to those cases where, from fraudulent or corrupt motives, or in unfair dealings, to secure a personal benefit to the members thereof, or to some third person, the court or board take the questioned action. An example of collusion or unfair dealing, such as would warrant the interference of chancery, is well stated by Mr. Justice Mayfield (*Long v. Shepherd,* 159 Ala. 599, 48 South. 675), as where, "for the purpose of defrauding the public, for their individual benefit, under color of official right and as a cloak to hide fraud," such a court or board, by virtue.

of an official contract or act, "attempt to have public funds applied, not for the use and benefit of the public, but for their own personal benefit, or for that of a third party with whom they contract."

This long line of authorities was recently reaffirmed by this court in *Talley et al v. Commissioners' Court of Jackson County,* 175 Ala. 644, 39 South. 167, and in *Town of Eutaw v. Coleman,* 189 Ala. 164, 66 South. 464, wherein it was emphasized that courts of county commissioners and boards of revenue have the exclusive power to determine the necessity for the erection of a. new courthouse, or for the making of other improvements for the citizens of the county. And, when the exercise of the power is free from fraud, corruption, or unfair dealing that amounts to collusion, their acts in that respect cannot be controlled by any judicial tribunal, notwithstanding the improvement may be unnecessary, or may be an unwise expenditure of the county's funds.

From the opinion in the last above-cited case, Mr. Justice Sayre writing, the following is quoted, as applicable to the case in hand: "The court of county commissioners have power and authority to appropriate county funds not otherwise set apart by law, to the improvement of the streets of Eutaw. We are not dealing with the advisability of what the commissioners have done. There is no charge of fraud, corruption, or unfair dealing, and, in the absence of some such charge, this court is committed to the doctrine that in no case involving the exercise of discretionary power by the court of county commissioners will their action be controlled by any judicial tribunal."

(2) The manner in which review of the void acts of such boards or courts may be had is clearly pointed out in *White v. Hewlett,* 143 Ala. 42 South. 78: "If

the board of revenue had the statutory authority to make the order, in making it the question of public convenience was involved and determined, and it would seem that a court of equity would have no jurisdiction over the subject-matter. * * * It is not the province of equity to correct the errors of another tribunal, vested with discretionary power, and proceeding under statutory authority. * * * If the board of revenue had no power to make the order, then the petitioner had open to him a plain and adequate remedy at law, by the writ of common-law certiorari. * * * The chancery court was without jurisdiction of the subject-matter involved, and, being without jurisdiction, it follows that the decree rendered in the case was void."

(3) The bill in this case alleges that the acts of the board of revenue of Covington county, as to building a new court house, were void. Except in cases of fraud, it is the duty of the complaining taxpayer to go before the board of revenue or court of county commissioners and make a proper motion to set aside the void proceeding of that body, and, failing therein, then to apply to this court for the common-law writ of certiorari to review such void action.—*White v. Hewlett, supra;* *Ex parte Boynton,* 44 Ala. 261; *Commissioners' court v. Wilborn,* 155 Ala. 195, 46 South. 585; *Barnett v. State,* 15 Ala. 829.

(4) A consideration of the bill as filed on December, 4, 1914, and as amended on December 11th, will show that one objection urged against the legality of the act of the board of revenue was inadequacy of notice of the proposed contract and of time allowed in which to secure bids. The statute did not require the board of revenue to advertise for bids, for the employment of

an architect, or for the erection of a courthouse, or for
the making of any other public improvement, however,
wise it might have been to give such notice. Theirs
was a discretion vested by law, to be exercised in the
manner deemed best for the general good. They were
the judges of the time when and of how the contract
was to be let. If their judgment was unsound, or if
they were weak and incompetent, and were overreach-
ed in the negotiation, such defect in their judgment can-
not·be reviewed by any court. If they were not capable
of handling the business of the county, of the charac-
ter and magnitude of that undertaken, they had the
right to employ an architect to assist and advise them.
They were not required by the statute to do so, nor to
give any notice to the public of their intention to do
so. If they are unfit to properly discharge the duties
of their office, resort must be had to some other method
for dispensing with their services.—*Hays v. Ahlrichs,
supra.*

Motion to dissolve the injunction being made on De-
cember 5, 1914, what effect on the injunction the amend-
ment of the complaint made on December 11, 1914, al-
leging that the board of revenue had, on October 19,
1914, purchased two lots (one from Mrs. Riley and
one from Dr. Broughton) for the site of the new court-
house, and making parties respondent to the bill W. L.
Stephens, Mrs. Anna M. Riley, and Dr. L. E. Brough-
ton? The amendment was not allowed by the chancel-
lor, but by the register, without notice to the respond-
ents, while the motion to dissolve was pending. The or-
der allowing the amendment did not attempt to pre-
serve the injunction, by incorporating the limitation
without prejudice.

It is insisted by the respondents that this amend-
ment by the complainant had the effect to dissolve the

injunction; and the ruling in *Craig v. Craig*, 175 Ill. App. 178, is cited as authority. But the justice rendering the opinion in the *Craig Case* was careful to say that: "It may operate to render the interlocutory decree inefficient, unless filed after leave of the court and without prejudice to the injunction.—22 Cyc. 981, note 49. The amendment, not changing the allegations of the bill, except to enlarge and strengthen them, we think did not affect the force of the injunction."

It has been held by other jurisdictions that an amendment adding other defendants has not the effect of dissolving the injunction.—*Fairchild v. House*, 18 Fla. 770; *Irick v. Black*, 171 N. J. Eq. 189. The cases on this point seem to indicate that the injunction is not, as a matter of course, dissolved upon the amendment, but that the amendment cannot be used to sustain the injunction.—*Barnes v. Dickinson*, 16 N. C. 330; *Mason v. Murray*, Dick, 526; *Verr v. Glynn*, Dick. 441; *Brooks, v. Preston*, 11 L. J. Ch. 122; *Welch v. Hannon*, 2 Sch. & Lef. 516; *Davis v. Davis*, 2 Sims. 515.

In High on Injunctions (4th Ed. § 1594), the prevailing doctrine is stated to be that whenever, pending an injunction, an amendment is allowed, it is without prejudice to the injunction, although the order granting leave to amend is silent as to its effect on the injunction.—*Shelden v. Vermilya*, 4 Sandf. Ch. 573; *Harvey v. Hall*, L. R. 11 Eq. 31; *Warburton v. London & R. R Co.*, 2 Beav. 252; *Brooks v. Burton*, 1 Y. & C. C. 271; *Ferrand v. Hamer*, 4 Myl. & Cr. 143; *Carey v. Smith*, 11 Ga. 539.

The case of *Robertson v. Montgomery Base Ball Association*, 140 Ala. 320, 37 South. 241, did not decide that the effect of an amendment to the bill, made pending a motion to dissolve the injunction, is to dissolve the

injunction. It decided only that the decree in that case was not such as would support an appeal to the Supreme Court.

The amendment made in the instant case, before the hearing of the motion to dissolve and before answer, relating as it did to different parties respondent and different matter, did no more than attempt to extend the injunction to the parties made respondents by the amendment, and did not have the effect of dissolving the injunction against the respondents Simmons, Prest-Wood, Deens, Powell, and Cook.

(6,7) Did the board of revenue, at a special term called as provided by law, or at a regular term of the court, purchase the lots from Mrs. Riley and Dr. Broughton, and did they employ an architect, W. L. Stephens, and adopt his plans for a new courthouse to be erected in Andalusia, and did they call for bids thereon?

The averments of the answer of respondents, filed on December 16, 1914, before the injunction was violated, state the facts of the meeting of said board, as to these matters, as follows: "That there was a session of the board of revenue held at a regular August term fixed by law, and on the second Monday of August, which was the 10th day of said month, and that said August term was adjourned to meet on September 14, 1914, and on September 14, 1914, was again adjourned to meet September 28, 1914, and was again adjourned to meet October 12, 1914, and on October 12, 1914, was again adjourned to meet on October 19, 1914"; "that subsequent to the said October 19, 1914, and at a regular meeting of the board of revenue held on the 9th day of November, 1914, the deeds were delivered by Mrs. Anna W. Riley and L. E. Broughton, to the lots thus purchased, and warrants issued upon the county treasury

for the payment of same, by the board of revenue, and delivered to said parties or their agents on said date, thereby ratifying and confirming all things theretofore done;" "that at a regular session of the board of revenue, which began on the 9th day of November, 1914, and continued through the 10th day of November, 1914, one W. L. Stephens was elected architect on the 10th day of November, 1914, and that the said board of revenue adopted the plans submitted by him for the erection of said courthouse, and entered into a contract with him as architect."

The regular November term was adjourned to November 30, 1914.

The statute fixes, as we have seen, the day of the meeting in regular session "on the second Monday in February, April, August, and November, respectively, of each year, and such special sessions as are now or may hereafter be required by law to be held by courts of county commissioners or other courts of like jurisdiction." This statute does not, by fixing the day on which the regular session shall begin, limit the action of the board of revenue in general session to this designated Monday. It does not require that all the county's business shall be concluded by the court in that one day. They are required to meet in regular session on that day, and are permitted and expected to continue the session from day to day, or as they may in session determine and declare, till the public business is concluded. The special session provided for in the act is not the prolongation of a regular session in the dispatch of the public business; it may be called when a proper adjournment has not been taken in regular session to a subsequent date. The regular session must begin on this day, and must be concluded, or prolonged, or adjourn-

ed to any other time the judgment or convenience of the board may dictate, not to extend beyond the next regular session. Any other construction of the statute would narrow this necessary general authority reposed in the court or board, and interfere with the proper conduct of the county's business by the officials to whose judgment such matters are confided by the electorate of the county.

If the minutes of the court show that the court was in session on the second Monday, and that they were in session on the next or succeeding days thereafter, the continuance of the regular session would be presumed. The minutes would not be required to show the prolongation of the general quarterly sessions from day to day, if the court was in continuous session. If, however, the court was not in continuous session, but it was thought to the best interest of the county, or most convenient to the court, to adjourn to a subsequent day within that term, this might be lawfully done. Though done at adjourned terms the acts of the board have the same validity as if done on the day of the regular meetings prescribed by law.—*Hays v. Ahlrichs, supra; Ashford v. McKee,* 183 Ala. 620, 635, 62 South. 879; *Lewis v. Intendent,* 7 Ala. 85; *Williams v. State,* 67 Ala. 183, 186; *Revel v. State,* 26 Ga. 275; *People v. Northrup,* 50 Barb. (N. Y.) 147.

The answer of respondents Simmons, Prestwood, Deens, Powell, and Cook, members of the board of revenue of Covington county, and W. L. Stephens, make exhibits all the minutes of the board of revenue relating to the erection of the new courthouse, and the minutes of the regular term, of November 9, 1914, which was held the second Monday in November, the time fixed by the statute. These minutes show that a regular

meeting of the board of revenue was held on that day, and at which term of the court or board were present W. F. Simmons, J. A. Prestwood, John J. Deens, W. D. Powell, and W. N. Cook; and it is recited therein that: "This day having been set apart for the examination of plans and election of an architect for the erection of a new court house, the board of revenue in session, on this the 10th day of November, 1914, proceeded as follows: After consideration and examination of all plans submitted, a motion duly made by J. A. Prestwood, and seconded by W. D. Powell to elect W. L. Stephens, of, New Orleans, La., as architect for the new courthouse, was carried by the following vote: Ayes, three; nays, one. Ayes, J. A. Prestwood, J. J. Deens, W. D. Powell: nays, W. N. Cook.

"The contract of W. L. Stephens was presented to the board of revenue, approved, and, on motion duly made, seconded and carried, the chairman of the board of revenue was authorized to execute and sign said contract for and on account of this board of revenue. On motion duly made by J. A. Prestwood, seconded by W. D. Powell, and carried, it is hereby ordered that plans of W. L. Stephens, as presented to this board of revenue, be and are hereby accepted by a vote as follows: Ayes, J. A. Prestwood, W. D. Powell, J. J. Deens; nays, W. N. Cook. Ayes, three; and nays, one.

"Mrs. Anna W. Riley, is hereby allowed the sum of $5,500 for the first payment on lot, due April 1, 1915.

"It is hereby ordered that Mrs. Anna W. Riley be allowed the sum of $5,500 for the final payment of lot due April 1, 1916.

"It is hereby ordered that L. E. Broughton be allowed the sum of $3,250 for the first payment on lot due April 1, 1915.

"It is hereby ordered that L. E. Broughton be allowed the sum of $3,250 for final payment on lot due April 1, 1916."

A motion was made, seconded, and carried "that the board adjourn to meet again November 30, 1914."

It is thus clear that whatever may have been the previous deliberations and acts of the board of revenue, relating to the erection of the new court house for Covington county, such deliberations were preliminary to the selection of the architect, W. L. Stephens, to the adoption of his plans and specifications therefor, and to the purchase of one of the two lots from Mrs. Riley and Dr. Broughton, on which the same was erected; and the official consideration, determination, and judgment thereon was had by the board of revenue at the November term, 1914.

(8) The exhibits do not show whether or not the warrants ordered and authorized to Mrs. Anna W. Riley and Dr. L. E. Broughton and made payable April 1, 1916, were interest bearing. This is immaterial, since it has been declared by this court that boards of revenue and courts of county commissioners may issue interest-bearing warrants to cover certain obligations of the county, including ones of this character. —*Town of Eutaw v. Coleman*, 189 Ala. 164, 66 South. 464; *Ala. City, G. & A. Ry. Co. v. Gadsden*, 185 Ala. 263, 64 South. 91. That the same were not itemized and verified was waived by the county.—*Crenshaw Co. v. Fleming*, 109 Ala. 554, 19 South. 906; *Talley v. Commissioners' Court of Jackson County, supra; Town of Eutaw v. Coleman, supra.*

(9) Could the board of revenue remove the court-house from its present site in the public square of Andalusia, to another lot, within the town, of their own

choosing? Section 41 of the Constitution provides that no courthouse or county site shall be removed, except by a majority vote of the qualified electors of the county, voting at an election held for such purpose, etc. This section does not forbid the erection of a new court house on a different site or lot in the same county seat or town. The terms "courthouse site" and "county site" have the same meaning, and designate the seat of the government of the county. In this sense, neither could be confined and restricted to one particular lot at the county seat. It was declared in *Matkin v. Marengo County, supra*, that, when a city or town is selected as a county seat, the boundary of such city or town, as it then exists, becomes the boundary of the county seat.

So, then, the lots purchased by the board of revenue from Mrs. Anña W. Riley and Dr. L. E. Broughton as a site for the new courthouse may be so used, if it is the judgment of the board of revenue, provided the lots are within the corporate limits of the city or town of Andalusia, as it was incorporated when the courthouse was first erected. If Andalusia was not incorporated at the time the courthouse was first built, then the boundaries of the municipality, as subsequently laid out, would demark the county seat of Covington county, and the board of revenue could designate any lot within such corporate limits of Andalusia as a courthouse site, without offending section 41 of the Constitution.

(10) At the adjourned term of the November session of the board, held on November 30, 1914, bids for the erection of the new courthouse for Covington county were received and opened, and a resolution was introduced by J. A. Prestwood, and seconded by W. D. Powell, requiring the architect to prepare a definite

program describing the work to be done, and to furnish the same to the contractors, with instructions to return their bids not later than 1:30 p. m. on December 1, 1914, and requiring further that "supplemental bids be also requested in like manner for metal windows on entire exterior of building" of a certain kind of glass, and of the dimensions indicated. The board of revenue recessed until December 1, 1914, when supplemental bids were received, but not opened, and the board adjourned until 8 o'clock, December 5, 1914, for the further consideration of these matters.

The rights of Mrs. Anna W. Riley and L. E. Broughton and W. L. Stephens were fixed by the action of the board of revenue at the November term of the court. No fraud, corruption, or collusion, on the part of either Mrs. Riley or Dr. Broughton, with any member thereof, as to the sale of either of said lots, is charged in the bill as originally filed on December 4th, or as amended on December 11th, making them parties.

As to respondent W. L. Stephens, no charge of fraud or collusion by him, with the board of revenue or the members thereof, or with any contractor bidding for the construction of the courthouse, is made in the bill as amended December 11, 1914. In the seventh paragraph of the original bill is the innuendo: "But after contract is made and entered into the architect can, by acting in collusion with the contractor, largely increase the profits to the contractor in the erection of the building," etc.

This is no allegation of fraud or corruption or collusion between Stephens and the board of revenue or its members, or between Stephens and any contractor. It was a matter of discretion which the board might reasonably confer upon the architect.

(11) The respondents Mrs. Anna W. Riley and L. E. Broughton were not necessary parties to the bill. If Mrs. Riley, the kinswoman of W. R. Chapman, chancellor, had not been made a party respondent, the chancellor would not have been disqualified, and could have discharged the duties of his office in hearing the motion to dissolve the injunction.

(12) This court, on certiorari, can review the action of the special chancellor on the motion for contempt against the Falls Construction Company and J. A. Prestwood, W. N. Cook, and W. D. Powell, as members of the board of revenue.

In *Alabama Power Company v. J. B. Adams et al.*, 191 Ala. 54, 67 South. 838, Mr. Justice Sayre says: "The contempt proceeding against appellant put on foot during the trial of this cause in the court below raised an issue entirely outside of the pending cause and has no proper place in this record. The fact that the trial court incorporated its judgment in the contempt proceeding into its judgment in the proceeding for condemnation under the right of eminent domain cannot suffice to establish the right of this appeal. * * * Defendant's remedy was by certiorari, mandamus, or some like extraordinary writ, and should have been pursued in a separate proceeding."—*Ala. Power Co. v. Keystone Lime Co.*, 191 Ala. 58, 67 South. 833; *Easton v. State*, 39 Ala. 551, 87 Am. Dec. 49; *Ex parte Dickens*, 162 Ala. 276, 50 South. 218; *Ex parte John Hardy*, 68 Ala. 303, 315.

The several decrees rendered by the special chancellor on January 1, 1915, were clearly not final decrees on the merits of the cause, but were judgments in the contempt proceedings on the answers of petitioners to the rule nisi to show cause why they should not be

punished for disobeying the injunction granted on December 4, 1914.

The contract for the erection of the courthouse was awarded on December 24, 1914, and was signed by Falls Construction Company, by M. P. Nichol, its vice president," and by "Covington County, State of Alabama, through and by the Board of Revenue of said County, J. A. Prestwood, W. N. Cook, W. D. Powell, Members of the Board of Revenue of Covington County, Alabama."

· The exhibits of the minutes of the board of revenue fail to show whether the board of revenue was constantly in session from day to day, from December 5th to December 24th, or whether the meeting on December 24th was an adjourned meeting from the December 5th meeting or some subsequent meeting. This inquiry is not material to the real question, now presented to this court for review by certiorari—the right of the special chancellor to punish petitioners for contempt.

The sworn answers of respondents J. J. Deens, W. D. Powell, and J. A. Prestwood, to the rule nisi, fully and unequivocally deny each and every allegation of the bill upon which complainant seeks to rest the jurisdiction.

Had the chancery court jurisdiction of the subject-matter as disclosed by the bill, when the injunction was granted on December 4, 1914? Under the cases we have examined, the exercise of discretionary power by a board of revenue cannot be controlled or reviewed by any tribunal, in the absence of averment and proof of fraud, corruption, or unfair dealing. The jurisdiction of the chancery court is dependent wholly on such allegation. If this is not averred, no jurisdiction is ac-

quired of the subject-matter or of the parties by the chancery court.

(13) The complainant cites sections 3057 and 4630 of the Code of 1907, and the cases of *Ex parte Walker*, 25 Ala. 81, and *Ex parte Stickney*, 40 Ala.160, as giving the court the power to adjudge respondents guilty of contempt for disregarding injunction by letting the contract for the erection of the new courthouse to Falls Construction Company. The sections of the Code referred to can only give the right of punishment when the party is "in contempt" of a court having jurisdiction. A construction that would give a power of punishment in a case where jurisdiction had not attached would not be due process. In *Ex parte Walker, supra*, the court expressly states that the right to enforce the lower court's orders by attachment for contempt was rested on the fact of that court's having jurisdiction of the parties and of the trust funds; the subject-matter being dealt with.

(14) In *Ex parte Stickney, supra*, it is stated that one cannot purge himself of contempt by showing that the court had no jurisdiction of the particular suit, where the court is one of general jurisdiction and the suit is one within the scope of its jurisdiction. The learned justice makes a distinction between the two phrases "scope of its jurisdiction" and "jurisdiction to entertain such a suit." The court must have jurisdiction of the subject-matter (the right to entertain the suit) before the right of punishment attaches for a disobedience of the court's orders or for an interference with the properties in the hands of the court.

In *Old Dominion Telegraph Co. v. Powers et al.*, 140 Ala. 220, 37 South. 195, 1 Ann. Cas. 119, this court passed on the question before us, declaring that: "Where

the court is without jurisdiction, it logically follows that there can be no contempt in the disobedience of a void order. The proposition that, where the injunction is void for want of jurisdiction in the court, the defendant cannot be punished by contempt proceedings for disregarding it, is supported both on reason and authority."

This statement of the law is that adopted by the text-writers.—1 Joyce on Inj. § 246; 2 High on Injunctions (3d Ed.) § 1425; 7 Am. & Eng. Ency. Law (2d Ed.) p. 57; 16 Am. & Eng. Ency. Law, p. 439; 4 Ency. Pl. & Pr. p. 776; 22 Cyc. 1019.

The question has many times been decided by appellate courts in the United States that an injunction issued on a bill showing that the court had no jurisdiction of the subject-matter is void and need not be obeyed.—*Ex parte Fisk,* 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; *Worden v. Searls,* 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853; *In re Ayers,* 123 U. S. 485, 8 Sup. Ct. 164, 31 L. Ed. 216; *In re Sawyer,* 124 U. S. 222, 8 Sup. Ct. 482, 31 L. Ed.402; *In re Terry,* 128 U. S. 305, 9 Sup. Ct. 77, 32 L. Ed. 405; *Ex parte Rowland,* 104 U. S. 604, 26 L. Ed. 861; *State v. Voorhies,* 37 La. Ann. 605; *Ex parte Hollis,* 59 Cal. 406; *Ex parte Brown,* 97 Cal. 83, 31 Pac. 840; *Dodd v. Una,* 40 N. J. Eq. 672, 5 Atl. 155; *Forrest v. Price,* 52 N. J. Eq. 16, 29 Atl. 215; *Calvert v. State,* 34 Neb. 616, 51 N. W. 687; *Bear v. Cohen,* 65 N. C. 511; *Commonwealth v. Perkins,* 124 Pa. 36, 16 Atl. 525, 2 L. R. A. 223; *Gilliam v. McJunkin,* 2 S. C. 442; *State v. Blair,* 39 W. Va. 704, 20 S. E. 658; *State v. Harper's Ferry Bridge,* 16 W. Va. 877; *State v. Milligan,* 3 Wish. 152, 28 Pac. 369; *In re Pierce,* 44 Wis. 411; *Walton v. Develing,* 61 Ill. 204; *Darst v. People,* 62 Ill. 306; *Lester v. Peo-*

*ple,* 150 Ill. 408, 23 N. E. 387, 37 N. E. 1004, 41 Am. St Rep. 375; *Dickey v. Reed,* 78 Ill. 261; *Munday v. Vail,* 34 N. J. Law, 418; *Wilcox v. Jackson,* 13 Pet. 511, 10 L. Ed. 264; *Ex parte Adam,* 25 Miss. 883, 59 Am. Dec. 234; *Ex parte Gardner,* 22 Nev. 280, 39, Pac. 570; *State v. Smithers,* 14 Kan. 629; *Brewer v. Kid,* 23 Mich. 440; *Haines v. Haines,* 35 Mich. 143; *Penn v. Wheeling Co.,* 18 How. 421, 15 L. Ed. 435; *People v. Donovan,* 135 N. Y. 79, 31 N. E. 1009; *People v. Edson,* 52 N. Y. Super. Ct. 53; *People v. Sturtevant,* 9 N. Y. 263, 266, 59 Am. Dec. 436.

(15) Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction to hear and determine.—*Pennoyer v. Neff* 95 U. S. 714, 24 L. Ed. 565; *Twining v. New Jersey,* 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97; *Scott v. McNeill,* 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; *Owl Ass'n v. McDonough,* 204 U. S. 8, 27 Sup. Ct. 236, 51 L. Ed. 345; *Hovey v. Elliot,* 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215; *Hammond Packing Co. v. Arkansas,* 212 U. S. 343, 351, 29 Sup. Ct. 370, 53 L. Ed. 530, 15 Ann. Cas. 645. Due process of law includes the right to be heard on the merits. The power to deny a hearing to a person in contempt does not include the power to refuse to such person in contempt the right to defend in the main case on the merits.

The decree of the special chancellor that certain of the petitioners in certiorari, the respondents in the court below, be not allowed to file any motion, answer, or pleading in the main cause until purged of an adjudged contempt therein, denied to the petitioners the due process of law guaranteed under the fourteenth amendment of the Constitution of the United States. —*Hovey v. Elliot, supra; McClatchy v. Sup. Ct.,* 119

Cal. 420, 51 Pac. 696, 39 L. R. A. 691; *Foley v. Foley,* 120 Cal. 33, 52 Pac. 122, 65 Am. St. Rep. 147; *Creig v. Ware,* 25 Colo. 187, 188, 55 Pac. 163.

(16) A careful examination of the bill filed in this cause on the 4th day of December, 1914, discloses that complainant therein was seeking to review the action of the board of revenue of Covington county by resort to injunction, and to restrain the board from the exercise of its statutory discretion and powers in the building of a new courthouse, without specific averment of facts that amounted to fraud, corruption, or unfair dealing and collusion on the part of the board of revenue or of the members thereof, with contractors or other persons, to divert the public funds for their own benefit or the benefit of third persons for or with whom they contracted. Without such specific allegations, the chancery court was without jurisdiction. Such were the necessary jurisdictional facts required to be averred and proved, by all the decisions of this state on the point, from the opinion by Mr. Justice Goldthwaite in *Hill v. Bridges,* 6 Port. 197, to that of Mr. Justice Sayre in *Town of Eutaw v. Coleman, supra.*

(17) It is not sufficient in chancery pleading simply to aver the evidence from which a required fact might be inferred, although the evidence itself, if uncontradicted, and not overcome by opposing proof, might be sufficient to induce a chancellor or a jury to find the fact from it.—*Bank of Tupelo et al. v. Hall et al.,* 178 Ala. 287; 59 South. 442.

(18) A fraudulent intent should be averred, and not left in inference, for the inference of the intent would be but the inference of one fact from another.—*Bliss v. Anderson,* 31 Ala. 625, 70 Am. Dec. 511; *Seals v. Robinson,* 75 Ala. 363. The jurisdictional facts were

not alleged in the bill of December 4th, or added by the amendment of December 11, 1914, and the court was without jurisdiction of the subject-matter and of the parties.

From. the foregoing it follows that the several decrees and orders of the special chancellor, imposing penalties and punishments on petitioners, must be declared null and void and held for naught. Petitioners are ordered relieved and. discharged from the fines, penalties, and conditions imposed by said several orders and decrees.

Writ of certiorari is granted quashing and declaring for naught the orders and decrees upon the contempt proceedings.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.